# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:16-cr-950 |
| vs. ) | |
| ) | **ORDER** |
| MARTELL SHARIF SMALLS, ) | |
| Known as Martel Quameh Bey, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on several motions brought by Martell Sharif Smalls, known as Martel Quameh Bey ("Bey"), regarding: (1) his status as a Moorish National; (2) claims that the court lacks jurisdiction over his case; (3) discovery issues; and (4) the alleged misconduct of members of the court and the U.S. Attorney's Office ("USAO"). For the reasons set forth below, the court denies or finds moot the motions.

## I. BACKGROUND

On December 14, 2017, Bey was charged in a ten count indictment for allegedly committing a robbery spree involving four businesses.

Count 1 is for violation of 18 U.S.C. § 922(g)(1), for being a felon in possession of a firearm; this count is based on a search warrant executed on March 4, 2016 on Bey's residence in Goose Creek that resulted in the recovery of a pistol and two shotguns.

Counts 2 and 3 are for violations of 18 U.S.C. §§ 1951 and 924(c)(1)(A)(ii), for Hobbs Act robbery and for brandishing a firearm during the commission of a crime of violence, respectively; these counts are based on Bey's alleged armed robbery of the Check Into Cash located at 8510 Rivers Avenue, North Charleston, South Carolina on September 20, 2016.

1

Counts 4 and 5 are for violations of 18 U.S.C. §§ 1951 and 924(c)(1)(A)(ii), for Hobbs Act robbery and brandishing a firearm during the commission of a crime of violence, respectively; these counts are based on Bey's alleged armed robbery of the Check-N-Go at 8316 Rivers Avenue, North Charleston, South Carolina on October 1, 2016.

Counts 6 and 7 are for violations of 18 U.S.C. §§ 1951 and 924(c)(1)(A)(ii), for Hobbs Act robbery and brandishing a firearm during the commission of a crime of violence, respectively; these counts are based on Bey's alleged armed robbery of the Advance America store at 505 North Highway 52, Suite C. Moncks Corner, South Carolina on October 5, 2016.

Counts 8 and 9 are for violations of 18 U.S.C. §§ 2113(d) and 924(c)(1)(A)(ii), for armed bank robbery and brandishing a firearm during the commission of a crime of violence, respectively; these counts are based on Bey's alleged armed robbery of the Wells Fargo Bank at 148 Sea Island Parkway, Lady's Island, South Carolina on October 27, 2016.

Count 10 is for violation of 18 U.S.C. § 922(g)(1), for being a felon in possession of a firearm; this count is based on a search warrant which was executed on November 8, 2016 on Bey's residence that resulted in the recovery of a pistol.

The bank robbery charge—Count 8—carries a possible sentence of 25 years. Bey's three Hobbs Act robbery charges—Counts 2, 4, and 6—carry a possible 20 year sentence. Each of Bey's felon in possession charges—Counts 1 and 10—carry a possible 10 year sentence. Thus, Bey is facing a potential sentence of 65 years for the robbery and felon in possession counts.

Bey is also facing mandatory minimum sentences for Counts 3, 5, 7, and 9 for violations of 18 U.S.C. § 924(c)(1)(A)(ii), brandishing a firearm during the commission of a crime of violence. If convicted on the first of these counts, he faces a mandatory minimum sentence of 7 years. If convicted for the remaining three § 924(c)(1)(A)(ii) counts, he will face a mandatory minimum sentence of 25 years per count. **Thus, Bey is facing a <u>mandatory minimum sentence of 82 years</u> if convicted of the four § 924(c)(1)(A)(ii) counts, <u>in addition to</u> the <u>potential 65 year sentence</u> for the robbery and felon in possession counts.** The court reiterates that, while it has some discretion over the potential 65 year sentence, it has no discretion whatsoever to lower the sentence for the four § 924(c)(1)(A)(ii) counts. In other words, if Bey is convicted of the § 924(c)(1)(A)(ii) counts, the court is bound by federal law to sentence Bey to a minimum of 82 years in prison, in addition to whatever sentence he receives for the robbery and felon in possession counts.

Since his indictment, Bey has filed a multitude of motions and other filings which the court construes liberally as motions, since Bey is proceeding <u>pro se</u>. The court now addresses those items that have been filed beginning in January 2018.

## II. DISCUSSION

The motions addressed in this order fall into four categories: (1) Bey's claims that the court lacks personal jurisdiction over him because he is a Moorish National; (2) Bey's claims that the court otherwise lacks subject-matter jurisdiction over the case; (3) discovery issues; and (4) the alleged bias and other wrongdoings of members of the court and the USAO. On September 25, 2018, the government filed an omnibus response to any pending issues. ECF No. 109. The court addresses each category in turn.

### A. Moorish National

Bey has filed several items contesting the court's jurisdiction over him because of his claimed status as a Moorish National. ECF Nos. 69, 73, 77, 82, 84, 104, and 112. Bey submitted to the court a document from the Library of Congress titled, "Treaty of Peace and Friendship Between the United States of America, and His Imperial Majesty the Emperor of Morocco," dated January 1787. He also submitted voluminous materials, including a lengthy discussion of his Moorish Nation jurisdictional theory. Bey argues that, as a member of the Moorish Nation, he is "removing / rescinding my signature from all Contracts enforced" on him, and that he is unable to take an oath that would be required to participate in court proceedings. ECF No. 82. He references social security applications, as well as the Bible and Muslim writings. He claims that the "suit" against him violates the Ninth and Fourteenth Amendments, as Federal Reserve notes are not money and are thus unconstitutional. He appears to claim that, under the Uniform Commercial Code 9-203, he has unlawfully been deprived of the use of his property without consent or just compensation. Bey also claims that "attorneys are considered Foreign Agents under the Foreign Agents Registration Act and are subject of the Ar Association (British Accreditation Agency)." Id. He also argues that, under "Title 28 U.S.C. 3002 Section 15Ab" the United States is a federal corporation and not a government. Id.

The court acknowledges Bey's right to defend himself against the charges levied against him and has devoted ample time to ensuring that he has been able to present his arguments to the court. However, it is frankly difficult for the court to discern from these filings any arguments that might state an actual basis for dismissal based on lack of

personal jurisdiction. Bey cites laws and principles that have no bearing on the criminal proceedings currently before the court. The court finds that "the legal position taken [in this case] is necessarily deficient" because "all of the provisions of the Treaty with Morocco are [ ] wholly inapposite" to the challenge currently before the court. Bey v. Hillside Twp. Mun. Court, 2012 WL 714575, at *5 (D.N.J. Mar. 5, 2012).[1]

This court joins the majority of courts in finding that there is no validity to Bey's claim that the court lacks jurisdiction over him due to his status as a Moorish National. See, e.g., Hampton v. City of Durham, 2010 WL 3785538, at *6–8 (M.D.N.C. Sept. 22, 2010) ("Any claims or arguments raised by Plaintiff which are based on his membership in the Moorish American Nation are [by definition] frivolous."); El–Bey v. United

---

[1] As the District of New Jersey described, the treaties between the United States and Morocco in no way apply to the criminal indictment brought against Bey:
> The bulk of the provisions of the Barbary Treaties: (a) focused on issues of maritime/admiralty, war, merchant purchases/sales and akin matters; and (b) were set forth in terms of protections of "vessels." . . . [I]n the Treaty with Morocco, which was a short accord consisting of mere twenty-five Articles, with only three Articles focusing not on acts of war, vessels, merchant activities, etc. but on the acts against generic civilian human beings. See 1836 U.S.T. LEXIS 10, arts. 6, 20 and 21. . . . None of these three Articles could be read as applying to habeas or civil rights claims raised by [the "Murakush" litigants] against state police or prosecutorial officers, or judges, as to the claims based on the events of [their] arrests, incarceration, bailing, prosecution, convictions, etc. See, e.g., Seals–Bey v. Cross, 2010 U.S. Dist. LEXIS 87794 (N.D.W.Va. July 23, 2010) . . . . Indeed, Article Six of the Treaty, was fashioned to prevent undue enslaving of American citizens (and also to prevent theft of American citizens' goods) in the Mediterranean[] by pirating Moors who were either of Morrocan or of non-Morrocan domicile and who were taking undue advantage of the passage ways, trade, accommodations, etc. in Moroccan coastal waters and ports. This Article is facially inapplicable to the [events which did] not occur anywhere near the coastal waters and ports of the Kingdom of Morocco and, to top it all off, were not conducted by Moors.

Bey, 2012 WL 714575, at *5.

States, 2009 WL 1019999, at 1 (M.D.N.C. Jan. 26, 2009) (rejecting a claim of Moorish nation sovereignty as an "attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws"); Great Seal Nat'l Ass'n of Moorish Affairs v. 46th Dist. Ct. of Oakland County, 2007 WL 169850, at *2 (E.D. Mich. Jan. 17, 2007) (dismissing claim that plaintiffs owned several parcels of property by virtue of their Moorish ancestry as "baseless, fantastic and delusional" and finding the complaint to be "indecipherable"); Khattab El v. U.S. Justice Dep't, 1988 WL 5117, at *5 (E.D. Pa. Jan. 22, 1988) (holding that "the United States has not recognized the sovereignty of the Moorish Nation, thus precluding sovereign immunity claims"). Thus, the court denies all motions and claims made in any filings based on Bey's Moorish National theory.

### B. Jurisdictional Challenge

Bey has also filed motions and affidavits that do not directly reference his claims to be a Moorish National but that otherwise attempt to contest the court's jurisdiction over him. ECF Nos. 74, 76, 92, 99, 116, and 117. Bey filed a Notice of Averment of Jurisdiction on March 8, 2018. ECF No. 74. Bey next filed an "Affidavit of Fact / Notice of Default" notifying the court that it had not yet ruled on his Notice of Averment. ECF No. 76. He argues that once jurisdiction has been challenged, "it must be proven." Id. Bey contends that "all government entities and alleged private corporations must be a creature of the American Constitution" and that his Notices are "formal request[s] and command[s] of United States and/or Judge David Norton and Assistant U.S. Attorney Sean Kittrell to produce for the record the physical documents per Article 3, Section 2 of the U.S. Constitution." As an initial matter, Article 3, Section 2 of the Constitution does

not require the USAO or the courts to provide "physical" evidence of its jurisdiction over Bey and this matter. Rather, the United States Congress has established that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C § 3231. The crimes for which Bey has been indicted are all federal crimes, designated as violations of Title 18 of the United States Code, and as such are "offenses against the laws of the United States." "Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts. That's the beginning and the end of the 'jurisdictional' inquiry." United States v. Hartwell, 448 F.3d 707, 716 (4th Cir. 2006) (quoting Hugi v. United Sates, 164 F.3d 378, 380 (7th Cir. 1999)). Thus, the court denies the requests made in Bey's Notice of Averment of Jurisdiction and finds that it has jurisdiction over his criminal case.

Bey also filed a Motion to Dismiss, in which he raises substantially the same arguments as in his Notice of Averment of Jurisdiction. ECF No. 99. Bey's Motion to Dismiss also mentions the exclusive jurisdiction of 40 U.S.C. § 255, now 40 U.S.C. § 3112. This statute is a part of Title 40, Public buildings, Property, and Works, in a subchapter titled "Acquiring Land." Title 40 is completely separate from Title 18, the criminal portion of the United States Code under which Bey has been indicted, and thus Title 40 has no relevance to criminal proceedings.

On October 29, 2018, Bey filed a Motion for Declaratory Judgment, which again contests the jurisdiction of this court over his case and the power of the USAO to prosecute him. ECF No. 116. Bey filed an Affidavit of Fact on the same day with

additional arguments regarding the court's jurisdiction over this case. ECF No. 117. These filings cite many statutes and legal principles that in no way apply to his case. ECF No. 116. In this motion he also argues that "the 'United States of America' is not cognizable as a constitutionally authorized party competent to prosecute crime[s] against the de jur American people in the Union of several States party to the Constitution of the United States." Id. ¶ 18. Bey has not submitted any case law recognizing this legal theory, nor could he, as it is wholly baseless and must be denied. The court denies Bey's motion based on the same reasons discussed in relation to Bey's Notice of Averment.

Based on the foregoing, the court denies to grant any of the claims or requests made in ECF Nos. 74, 76, 99, and 116.

**C. Discovery**

Bey also has several pending discovery matters—a Motion to Compel, ECF No. 83, and two Motions for Discovery, ECF Nos. 87 and 97. The Motion to Compel is a list of discovery questions for the government that are not relevant to this case. ECF No. 83. The court finds that the government is not required to produce the requested information and denies the motion to compel. The court takes judicial notice of the fact that Sean Kittrell and Christopher Schoen are Assistant U.S. Attorneys for the USAO located in Charleston, South Carolina, and that they have the authority to prosecute this case.

Bey's Motions for Discovery, ECF Nos. 87 and 97, were addressed by the court's order on August 24, 2018 granting Bey's request to allow him to possess discovery at the jail. ECF No. 94. Since that time, the government has placed all of its discovery on a thumb drive that Bey can access on a laptop located at the jail. At the most recent status

conference on November 1, 2018, Bey acknowledged that he had been able to access this discovery. Thus, the court finds ECF Nos. 87 and 97 to be moot.

### D. Wrongdoing by the Court and the U.S. Attorney's Office

Bey has filed several motions and documents objecting to certain actions by the court, employees of the court, and of the USAO. ECF Nos. 72, 100, 101, and 104.

Before addressing Bey's allegations of the court's misconduct, the court notes that Bey made several requests to proceed without an attorney and without standby counsel. ECF Nos. 66, 67, and 88. Specifically, he requests that his former attorney, Ann Briks Walsh ("Ms. Walsh"), not be allowed to act as his standby counsel. The court settled this issue with Bey at the status conference on September 27, 2018. Ms. Walsh will remain on standby in case Bey would need or desire representation later in these proceedings. The court finds ECF Nos. 66, 67, and 88 to be moot.

Bey claims that "Judge David C Norton acted as an unsolicited power of attorney which is a breach of his fiduciary duties to practice the law from the bench by making a legal determination for the defendant, stating that the defendant should keep Ann Walsh as counsel when the defendant made it clear that he reserved his right to counsel" and that he desired to "represent himself In Propria Persona, Sui Juris, and not pro se." ECF No. 72. As noted, the court has addressed with Bey the issue of Ms. Walsh acting as standby counsel. The court reiterates that it does not owe fiduciary duties to criminal defendants and that, in asking Ms. Walsh to remain on standby, it was not practicing law, making a legal determination, or violating any ethical principles that govern the judiciary. Thus, the court denies the claims and requests made in Bey's Affidavit of Fact, ECF No. 72.

Bey submitted a Bill of Attainder, ECF No. 101, and two Notices of Affidavit of Fact, ECF Nos. 100 and 102, which all allege that the court has acted inappropriately in these proceedings. Specifically, Bey accuses the court of the deprivation of his rights and of committing felony treason for failure to uphold the oath of office. The court finds that it did not commit any of the alleged wrongs and denies to grant Bey any relief based on these claims. Bey also argues that the employees of the clerk's office in this court violated their duties by failing to file his motions and affidavits that he submitted through the mail. ECF No. 105. The court affirms that the clerk's office has uploaded to ECF every filing it has received from Bey and denies any claims made by Bey in this Notice of Demand, ECF No. 105.

### III. CONCLUSION

For the foregoing reasons, the court denies ECF Nos. 69, 72, 73, 74, 76, 77, 82, 83, 84, 92, 99, 100, 101, 102, 104, 105, 112, 116, and 117, and finds to be moot ECF Nos. 66, 67, 87, 88, and 97.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**November 20, 2018
Charleston, South Carolina**